# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RICKY LYNN YATES,           )
                            )
        Petitioner,    )
                            )     1:05CV381
   v.                       )
                            )
ERNEST SUTTON, Supt. of     )
Pasquotank Correctional Inst., )
                            )
        Respondent.   )

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on Respondent's motion for summary judgment (docket no. 4). Petitioner has responded in opposition to the motion and the matter is ripe for disposition. For the reasons which follow, it will be recommended that the motion be granted.

## BACKGROUND

Petitioner is a state court prisoner who was convicted by a jury in the Durham County Superior Court, the Honorable David Q. LaBarre presiding, of resisting a public officer, possession of heroin, possession of methadone, possession of cocaine, possession of less than 1.5 oz. of marijuana, and possession of drug paraphernalia. After his conviction, Petitioner pled guilty to achieving the status of habitual felon, and he was sentenced to a consolidated term of 151–191-months imprisonment. The North Carolina Court of Appeals found no trial error, but the

court remanded for re-sentencing due to improper classification of the misdemeanor marijuana possession. *State v. Yates*, 589 S.E.2d 902 (N.C. Ct. App. 2004).[1]

Petitioner filed a motion for appropriate relief (MAR) in state court raising issues of 1) unlawful and involuntary guilty plea to the habitual felon indictment; 2) unconstitutional search and seizure; 3) his conviction was obtained by evidence gained through an unlawful arrest; 4) the habitual felon indictment was issued by a grand jury which was prejudiced against him by reason of race or religion; and 5) the trial jury was unconstitutionally selected, impaneled, and "constituted." The MAR court summarily denied the motion and the court of appeals denied a petition for writ of certiorari.

In his federal habeas petition, Petitioner raises four grounds for relief: 1) unconstitutional search and seizure; 2) ineffective assistance of trial counsel; 3) racial or religious discrimination in the selection of his grand jury foreman; and 4) involuntary and unintelligent guilty plea to the habitual felon indictment.

The North Carolina Court of Appeals summarized the trial evidence as follows:

> Prior to trial, defendant filed a motion *in limine* arguing for the suppression of evidence obtained by the police during a search of his person. At the suppression hearing, Deputy Raheem Abdul Aleem with the Durham County Sheriff's Department testified that he and Sergeant Derek O'Mary were at a Waffle House on Highway 55 at 2:30 a.m. on 15 September 2001. They were off-duty but dressed in uniform. The officers were standing in the foyer of the Waffle House between the entrance doors and the

---

[1] On direct appeal, Petitioner raised a search and seizure issue; an issue relating to his resist, delay, and obstruct conviction; and the marijuana sentencing issue.

Case 1:05-cv-00381-WWD   Document 8   Filed 11/15/05   Page 2 of 14

doors leading into the seating area when they noticed a vehicle pull into the parking lot. Defendant, with whom Deputy Aleem was familiar from seeing him at a substance abuse clinic, and two women exited the vehicle and entered the Waffle House. The women walked into the Waffle House ahead of defendant, passed the officers, and went to the seating area through the second set of doors. Defendant did not open the front door until the second set of doors had closed behind the women. As he passed through the foyer, the officers detected the odor of marijuana. Deputy Aleem was familiar with the scent of marijuana from his participation in approximately 400 to 500 cases while assigned to the narcotics division.

A few minutes later, the two women and defendant exited the Waffle House without having ordered any food. Defendant walked through the foyer first this time, and the officers again noticed the smell of marijuana. After asking defendant if he could speak to him for a minute, Deputy Aleem followed defendant into the parking lot while Sergeant O'Mary started a conversation with the two women. Deputy Aleem told defendant he had smelled marijuana on him. In response, defendant accused Deputy Aleem of harassing him because Deputy Aleem knew "he had a drug problem" and asked if he could call his mother on his cellular telephone. After defendant had placed the telephone call to his mother, Deputy Aleem explained that, due to the odor the officers had noted, he needed to know if defendant had anything in his pockets. Defendant again replied the officer was "harassing him" but then started emptying the contents of his pockets onto the hood of a vehicle, stating: "No, this is all I have." By this time, Sergeant O'Mary had obtained the women's consent to search their vehicle and was in the back seat, pointing to something inside the vehicle. According to Deputy Aleem, defendant "[t]hen ... went into his side pocket, ... got in there[,] and pulled his hand out," saying "[n]o, that's all I got." Defendant raised his hands in the air, whereupon Deputy Aleem searched defendant's waistband and proceeded to defendant's inside pocket. As Deputy Aleem's hand moved toward that inside pocket, defendant grabbed the officer's hand from the outside of his coat, trapping Deputy Aleem's hand in the pocket. Deputy Aleem struggled with defendant to free his hand. During this struggle, small white pills fell out of defendant's pocket and onto the ground. When Deputy Aleem and Sergeant O'Mary, who

3

came over to offer assistance, managed to restrain defendant, they found four bindles of heroin and a $10.00 bill, into which marijuana and a white powder substance had been folded in defendant's hand. Defendant was subsequently placed under arrest, and the items found in his possession were analyzed and determined to be methadone, heroin, marijuana, and cocaine.

The trial court denied defendant's motion to suppress, finding Deputy Aleem had probable cause to search defendant under *State v. Greenwood,* 301 N.C. 705, 273 S.E.2d 438 (1981). The case proceeded to trial, at which Deputy Aleem testified in conformance with his *voir dire* testimony and the controlled substances and drug paraphernalia from defendant's pocket were introduced into evidence. Defendant made no objection to the admission of this evidence, nor to Deputy Aleem's testimony.

**ANALYSIS**
**1. Summary Judgment Standard**

In a habeas case, a set of allegations is not entitled to an evidentiary hearing just because it is, on its face, not without merit. *Blackledge v. Allison*, 431 U.S. 63, 80 (1977). Rather, "[a]s in civil cases generally, there exists a procedure whose purpose is to test whether facially adequate allegations have sufficient basis in fact to warrant plenary presentation of evidence. That procedure is, of course, the motion for summary judgment." *Id.* Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. International Bus. Machs. Corp.,* 135 F.3d 911, 913 (4th Cir. 1997).

It is too glib, however, simply to say that the standard formulation for assessing summary judgment in the run-of-the-mill civil case applies in all habeas cases. For example, the usual summary judgment analysis contemplates accepting

4

the evidence and all justifiable inferences from the evidence in the light most favorable to the non-movant. In the habeas context, however, if there is a contention that the evidence at trial does not support the underlying conviction, the appropriate standard calls for viewing the evidence in the light most favorable to the prosecution and according the prosecution the benefit of all reasonable inferences from the evidence, and in that light, determining if any rational trier of fact could have found the petitioner guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). By way of another example, in a habeas claim of ineffective assistance of counsel, a federal court "must indulge a strong presumption that counsel's conduct was reasonable, and . . . the petitioner must overcome the presumption that the challenged conduct may have been sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Nevertheless, the point is that habeas cases are subject to a summary judgment analysis as are all civil cases. *See* Rule 11, Rules Governing Section 2254 Cases In The United States District Courts; *see also Maynard v. Dixon*, 943 F.2d 407, 412–13 (4th Cir. 1991) (FED. R. CIV. P. 56 applies to habeas proceedings); *but cf.*, 17A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4268 (2d ed. 1988) ("The procedure of applications for habeas corpus for state prisoners is a confusing amalgam, to be found in a variety of different sources. There are a number of procedural provisions in the habeas corpus statutes themselves.").

Furthermore, because Petitioner filed his federal habeas petition after the April 24, 1996, enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the AEDPA amendments to 28 U.S.C. § 2254 apply. Under the AEDPA amendments, no habeas application by a state court prisoner may be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). In addition, factual determinations made by a state court are afforded a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1).

A state court decision is contrary to Supreme Court precedent if it arrives at a conclusion opposite that of the Supreme Court on a question of law or decides the case differently from Supreme Court precedent based on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision is an unreasonable application of Supreme Court law "when a state-court decision unreasonably applies the law of [the Supreme] Court to the facts of a prisoner's case." *Id.* at 409. The "unreasonable application" standard does not admit of easy definition. For example, Justice O'Connor, writing for a majority of the Court, has said that "[t]he term 'unreasonable' is no doubt difficult to define."

6

*Williams*, 529 U.S. at 410. Nevertheless, more recently the Supreme Court has said that the

> unreasonable application prong of § 2254 (d)(1) permits a federal habeas court to grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of petitioner's case. In other words, a federal court may grant relief when a state court has misapplied a governing legal principle to a set of facts different from those of the case in which the principle was announced. In order for a federal court to find a state court's application of our precedent unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable.

*Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citations omitted); *see also Penry v. Johnson*, 532 U.S. 782, 793 (2001) (stating that even if the habeas court determines that the state court decision applied federal law incorrectly, relief is only appropriate if the application was also objectively unreasonable); *Williams*, 529 U.S. at 410 (stating that an *unreasonable* application of federal law is different from an *incorrect* application of federal law). Finally, even if the state court's adjudication is contrary to or an unreasonable application of Supreme Court precedent, a federal habeas court may not grant relief unless the constitutional error "had substantial and injurious effect or influence in determining the jury's verdict."[2] *Penry*, 532 U.S. at

---

[2] On direct review, a state appellate court may find a constitutional error harmless only if it is harmless beyond a reasonable doubt under the standard articulated in *Chapman v. California*, 386 U.S. 18, 24 (1967). In 1993, the United States Supreme Court made clear in *Brecht v. Abrahamson* that, with respect to non-structural errors, a federal habeas court reviewing a constitutional error must ask whether the error "'had

795 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). These standards will guide the analysis below.

2. <u>Search and Seizure</u>

Petitioner claims that his conviction was obtained by use of evidence gained in an unconstitutional search, seizure, and arrest. This issue need not detain the court long because Petitioner was granted a suppression hearing in the trial court, a fact he acknowledges. *See* Petition, ¶ 12 Ground One; *see also* Transcript of Jury Trial (Tr.), pp 7-32; *State v. Yates*, 589 S.E.2d at 904 ("The trial court denied defendants' motion to suppress . . . ."). Moreover, the issue was reviewed by the court of appeals. *Yates*, 589 S.E.2d at 904-05. The Supreme Court has said "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted

---

substantial and injurious effect or influence in determining the jury's verdict.'" 507 U.S. at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). The *Chapman* standard is "more stringent" than the *Brecht* standard, *California v. Roy*, 519 U.S. 2, 6 (1996) (Scalia, J., concurring), meaning that the petitioner seeking relief has a higher burden under the *Brecht* standard of review than under the *Chapman* standard of review. The circuits appear to disagree over whether, on federal habeas review, the *Brecht* "substantial and injurious" standard of review has survived the passage of the AEDPA amendments. This circuit's court of appeals has taken the position that the *Brecht* standard of review has indeed survived the passage of the AEPDA amendments. *See, e.g., Fullwood v. Lee*, 290 F.3d 663, 679 (4th Cir. 2002) (stating that even if the state court's adjudication of Petitioner's claim was contrary to or an unreasonable application of Supreme Court precedent, a federal habeas court may not grant habeas relief unless the error had a "substantial and injurious effect or influence in determining the jury's verdict," subject to the limitation that if the court is in "grave doubt" as to an error's harmlessness, the court must grant relief) (quoting *Brecht*, 507 U.S. at 637). I note that in this case the court does not reach the *Brecht* question because the state court's adjudication was neither contrary to nor an unreasonable application of Supreme Court precedent.

8

federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 481-82 (1976); *see also Wright v. West*, 505 U.S. 277, 293 (1992)("We have also held . . . that claims under *Mapp* [evidence obtained in violation of the Fourth Amendment] are not cognizable on habeas as long as the state courts have provided a full and fair opportunity to litigate them at trial or on direct review."); *Mueller v. Angelone*, 181 F.3d 557, 570 n. 8 (4th Cir. 1999)(acknowledging *Stone v. Powell* rule that federal habeas courts decline to review state court Fourth Amendment determinations); *Grimsley v. Dodson*, 696 F.2d 303, 304 (4th Cir. 1982)("*Stone v. Powell* marked, for most practical purposes, the end of federal court reconsideration of Fourth Amendment claims by way of habeas corpus petitions where the petitioner has an opportunity to litigate those claims in state court."). Once a district court has inquired into whether the petitioner had an opportunity to raise a Fourth Amendment claim, "it need not inquire further into the merits of the case . . . unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired." *Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978).

Because Petitioner had a full and fair opportunity to litigate his suppression claims in the state courts, the search and seizure claim is not subject to federal habeas review.

9

3. <u>Ineffective Assistance of Trial Counsel</u>

Petitioner claims that his trial attorney was ineffective because of "lack of preparation" and "lack of legal knowledge" in advising Petitioner to plead guilty to the habitual felon indictment. In addition, in his summary judgment opposition response, Petitioner says that his trial attorney had a conflict of interest because he was a fraternity brother of one of the officers who testified in his case. Petitioner's "lack of preparation" and "lack of knowledge" contentions are conclusory and do not warrant an evidentiary hearing. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992), *abrog'n on other grounds recog'd, Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3rd Cir. 1991) ("Bald assertions and conclusory allegations do not provide sufficient grounds to warrant . . . an evidentiary hearing."). Petitioner must do more than simply put forth a contention of ineffective assistance; rather, he "must come forward with some evidence that the claim might have merit, either in his brief or from the record in the case. *Nickerson*, 971 F.2d at 1136 (noting the lack of evidence in the record to support a claim that additional investigation by the trial attorney would have enabled the petitioner to make out a claim). Furthermore, to the extent that Petitioner alleges a conflict, in addition to this claim being conclusory, Petitioner has failed to show any prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (a petitioner must show that counsel's performance prejudiced the defense, which requires a showing that counsel's errors were so serious as to deprive the petitioner of a fair trial, a trial whose result is reliable). This claim is without merit.

10

Case 1:05-cv-00381-WWD    Document 8    Filed 11/15/05    Page 10 of 14

4. Racial and Religious Prejudice in the Grand Jury

Petitioner claims "discrimination" in the grand jury which issued the indictments. To support this claim, he says "racial prejudice" was used in selecting the grand foreman, and that "for a substantial amount time in the past, the grand jury foremans (sic) have not been Muslim or Black."  This claim suffers from being nothing more than a bald, conclusory allegation devoid of any showing that the claim might have merit.  This claim does not entitle Petitioner to any relief; in fact, it does not entitle him to an evidentiary hearing.

5. Involuntary and Unintelligent Guilty Plea to the Habitual Felon Indictment

Petitioner claims that "many" of the convictions used to support the habitual felon indictment were constitutionally deficient because they were obtained in violation of the right to counsel; and because his trial counsel advised him to plead guilty, he was ineffective.  The North Carolina habitual felon statute provides, in part, that "a[]ny person who has been convicted of or pled guilty to three felony offenses . . . is declared to be an habitual felon."  N.C. GEN. STAT. § 14-7.1.  Petitioner's habitual felon indictment alleges convictions of a 1994 felony drug charge, a 1995 felon-in-possession charge, and a 1999 felony drug charge.  Of course, Petitioner does not identify which of these charges he faced without an attorney.  Rather, he simply alleges that "many" of the convictions were obtained without benefit counsel.  The court notes that, in his moving papers, Respondent has provided a sentencing worksheet used in the superior court in Petitioner's case, listing 24 prior convictions;

11

and neither does Petitioner identify which of these priors were obtained without benefit of counsel.

Controlling Supreme Court precedent supports a challenge to un-counseled, underlying convictions which are used to enhance a defendant's sentence. *See Custis v. United States*, 511 U.S. 485 (1994). Nevertheless, the infirmity of these unconstitutional convictions lies in the "failure to appoint counsel for an indigent defendant . . . ." 511 U.S. at 496. There is apparently no constitutional infirmity if a criminal defendant waives counsel, even if he is indigent, or declines to hire counsel if he can afford one. The fault with Petitioner's contention here is readily apparent: He simply says that "many" of his convictions were obtained in violation of the right to counsel. Of course, he makes no contention that the three convictions supporting the habitual felon indictment are infirm, and nowhere does he make a contention that he applied for, was found eligible for, and was denied counsel. The conclusory nature of this allegation is thus brought full circle and serves to explain why courts have refused to grant habeas relief or even grant a hearing on such bald statements. In the end, this court is left with the inescapable conclusion that this allegation is without basis in fact, otherwise Petitioner would have identified with some precision just which of his "many" prior convictions were un-counseled.[3] In this

---

[3] Unfortunately, Respondent did not address this part of the claim concerning the guilty plea. Rather, Respondent seems to have used "boilerplate" language about the presumed validity of a guilty plea. Nevertheless, this court, with the assistance of its Probation Office and the access of that office to records maintained by the North Carolina Administrative Office of the Courts, has determined that, for all three of

12

posture, this contention is nothing but the sort of conclusory statement which is unavailing in the habeas context. It is, after all, Petitioner's burden in habeas to show that counsel's performance was prejudicially ineffective. *See Bramblett v. True*, 59 Fed. Appx. 1, 10 n.11 (4th Cir. 2003) (citing *Savino v. Murray*, 82 F.3d 593, 598-99 (4th Cir. 1996) for the proposition that *Strickland* requires affirmative proof that a criminal defendant received deficient legal representation and that unprofessional errors prejudiced his case). This contention is without merit.

**CONCLUSION**

Accordingly, for all these reasons, IT IS RECOMMENDED that Respondent's motion for summary judgment (docket no. 4) be GRANTED.

_____
Wallace W. Dixon
United States Magistrate Judge

November 15, 2005

---

Petitioner's underlying convictions for the habitual felon indictment, he was represented by counsel. Specifically, he was represented by attorneys Edward Falcone and Robert Brown, Jr. in the Durham County cases and Karl Knudsen in the Wake County case. In addition, it is worthy of note that Petitioner pled guilty in each case. On the basis of this information, it appears that Petitioner not only has put forward the claim in bald, conclusory language, but also he has been untruthful in putting forward the claim. For future cases, Respondent is urged to pay more careful attention to the claims and bring false allegations to the court's attention.

13